The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good afternoon. We'll first call 4-23-0116 Jean R. Glass versus the Illinois Department of Corrections et al. And that's Jean R. Glass et al. At this time, I would ask that counsel for the appellant please state your full name for the record. Good afternoon. May it please the court, Bethany Hager for the appellant. Thank you. And for the appellee? Good afternoon, Your Honor. Assistant Attorney General Carson Griffiths for the State Defendants. Thank you. Good afternoon, Your Honor. Steve Yochich on behalf of AFSCME Council 31. Thank you. You may all be aware that there is a nationwide alert that's going to be happening on all phones. So I'd ask that those of you who are able or not using your phones to be in the Zoom hearing, shut off those phones. And we will proceed when you are not speaking to the court. If you would mute your phone and we will try to proceed the best we can. It's scheduled to occur in about 10 minutes. Counsel for the appellant, you may proceed. Thank you. May it please the court and counsel, on behalf of the appellants Glass, Fowler, Tangeros, Gregory and Winters, I would like to begin by noting that when these plaintiff appellants took their positions in various departments of the State of Illinois congregate care facilities, they signed on knowing that certain conditions of the workplace would exist, certainly that were unique to the position they were taking in Department of Corrections, Department of Juvenile Justice, Department of Veteran Affairs and such. In those congregate care facilities, plaintiffs knew that they would have long shifts, perhaps difficult situations, perhaps even some dangerous circumstances that they would face each day. But the element that remained is that at the end of each workday, plaintiffs would continue to have the integrity of body, mind and spirit that they could take home with them at the end of the day to family and friends and continue to have that identity and their fundamental state of themselves at the end of the day. And even during the changes that came with the onset of COVID-19, when in March 2020, the governor asked everyone in the state of Illinois to shelter in place for two weeks to flatten the curve. These plaintiffs were considered essential workers. And so they did continue to report to their places of work and submit to the conditions that might be found there, taking necessary precautions to protect themselves, their families and the people they worked with from the risk of mitigating the risk of contracting COVID-19. And all through the months that followed, they continued to report to their places of work, taking again those precautions and mitigations that were reasonable and necessary, keeping themselves safe to work and the people that they worked with safe. Council, if I may interject, that frames where we're going nicely. Did you want to address the motion to strike and the lacking of a brief in favor of a memorandum in this cause? I would address that simply by saying that it's plaintiff appellate's position that with the issue in this appeal being so narrow as to jurisdiction and previously briefed on the in the record of this case, that it's plaintiff's position. The court has in front of it sufficient citations and materials to to make a ruling and a decision on that issue. So I have a question. Are your clients still working for the state of Illinois in the same positions they were working in before? Some of them have been subjected to the discipline and the suspension, the unpaid suspension. But to my knowledge to date, their employment situations remain the same as they were when we were filing. Have any of them undergone vaccination? From this group, to my knowledge, none of them have received the vaccination. Is my understanding correct that the requirement of their employment pursuant to the governor's order is that they either will undergo vaccination or they if they refuse for whatever reason or they're exempted for whatever reason, that they must be tested weekly to see if they have COVID? The requirements did change periodically throughout and from department to department. There were different requirements imposed in general across the board. What was told to them on paper was that the executive order required submitting to the vaccine or to periodic testing or to having their exemption approved. And then they were told what the exemption process would be. Each one ended up having a slightly different timeline of their exemption being examined and approved or disapproved. And so as it did play out over time, some of them were subjected to different requirements about, for instance, in some departments, the testing was not required until somebody's exemption was approved or disapproved. And while they were waiting in that limbo, there was not the same testing requirements imposed that others around them in their similar situation might have had. But then when exemptions were approved or disapproved, then they were given instructions about that weekly testing in the requirements for the weekly testing. Sometimes it was available on site. Sometimes it required travel to distances of up to an hour or more away to receive the testing. That then wasn't they weren't compensated for that time or for that expense. It was very different department to department and facility to facility. So. At the moment, anyway, if I understand correctly, they haven't been vaccinated. And they are undergoing the alternative, if you're not vaccinated, of having. Tests generally weekly for COVID and though you're complaining about some of the difficulties associated with getting the tests for some of the people, is that right? That is a hardship that some have faced. Yes. Well, I'm a little surprised to hear that. Like a lot of people, we've all undergone testing that is relatively easy and straightforward. Is there any question about why can't this be done for the people who are required to travel some distance? Why can't it be done without that travel by some other persons? Has that question come up or what? Could this be a labor issue for the labor board to pursue? I think there's many details of that again from facility to facility and department to department. What people are facing, as you might say, on the ground is ends up being so different and jumbled from what they're told from those higher level instructions. It has been difficult to get a handle on their particular daily circumstances. You even deal with one person has a certain shift schedule. And when the testing is available near them, it's so different even from somebody else who works in their same facility just because of shift schedules. Here's my question on it. The testing may be inconvenient, but it seems to me it's of a different kind than requiring a vaccination. I think there's a legitimate basis to claim that an unwilling vaccination is forcing someone to undergo a medical procedure and have things injected in his or her body they don't want. Is different in kind than just saying we have to be tested. If, in fact, no one was going to be fired if they underwent weekly testing. Seems to me your constitutional claim underlying all this is dramatically weakened. Why would I be wrong about that? Thank you, Justice. And that does get to the heart of the issue that no matter you can get into the weeds and the details of testing and the side effects of the vaccine and the fact that it was required when it's only emergency use authorized. But at the heart of all of it, this is an issue that is a public health issue. And as a matter of public policy, both under Illinois statute and precedent of the United States Supreme Court, the entire issue belongs something that is a is a personal decision for each individual to make. It should not have been mandated. Either vaccination or testing should not have been mandated. Why are you putting testing on the same level as a forced vaccination? Seems to me that it's entirely different. There's no forced intrusion into someone's body to test them before they have this. I mean, all the aspects of the forced vaccination that which you complain, none of them are present for mandatory testing. Again, on what basis are you equating getting tested weekly with forced vaccination? Respectfully, the testing there's two types of the testing. The one with the nasal swab is an insertion of that nasal swab far into the nasal cavity of the person being tested. And there's much documentation of people having irritation, nosebleeds, headaches, side effects from the chemicals that are involved with that swabbing. And then the other type of testing, which is gathering saliva into a spit tube and then sending it off for testing. The way that that was carried out in some facilities was problematic, but then that those body particles being sent off to undisclosed locations and used in ways that people hadn't consented to. That is their DNA. That is their personal information going off to an undisclosed location. But way before any of that is the issue that this response to COVID-19, this decision of how we are going to mitigate a potential disease is a public health issue, not a workplace health and safety issue. And the Supreme Court, the United States Supreme Court has rejected the idea that COVID-19 is a workplace danger that's susceptible to responses such as defendants, appellees have put forth in this instance at all. Has there been any administrative proceedings at your request or at anyone's request regarding any of your claims? There have been administrative proceedings going along with simultaneously with these court proceedings. But again, it is also plaintiff appellants position that they are entitled and allowed under Supreme Court precedent and under Illinois law to bring their claims directly to court for more immediate relief and for immediate addressing. Answering yes or no would be helpful because I don't want you to take up a lot of other questions to ask you. What administrative proceedings have the plaintiffs here brought regarding the objections that they're raising to the vaccination or testing requirement? Yes, they have continued to be in touch with their local unions and to file grievances and advance those through the stages that are available to them there. And there's been EEOC proceedings that have gone along parallel with the court filings. Let me be clear. Your clients, the plaintiffs in the case before us, have initiated proceedings, complaints, ultimately that would be under the jurisdiction of the Illinois State Labor Relations Board? It was Illinois, if any have been before state agencies, it was Illinois Department of Human Rights. Okay, so you raised the matter before the Illinois Department of Human Rights. Is that correct? These are claims that can run simultaneously. Yes. Well, why shouldn't you be required to exhaust your administrative remedies before taking any action in circuit court? Because the nature of the issues that are at play, which is public health and public policy, the United States Supreme Court says those claims can be brought in court directly, not having to rely solely on either the union process, collective bargaining or other administrative processes. These are fundamental individual rights and claims that can be brought directly to court. Well, you could have just brought it in circuit court, as opposed to pursuing any administrative remedies, couldn't you? That's what we did. Well, but you told me just now you're also pursuing remedies before the, what was it, which commission? Human Rights Commission? Well, when these plaintiffs filed their EEOC claims, which can run concurrently with a court claim, in a few of those cases, the EEOC refers that claim down to the Illinois Department of Human Rights and they investigate simultaneously. So your clients were pursuing the EEOC claim? Yes, Judge. Well, you know that the trial court granted the State Defendant's motion to dismiss on the grounds the court lacked subject matter jurisdiction because of the administrative proceedings. Why, given the fact that you're pursuing administrative proceedings, why wasn't that correct? Because these are claims for which it's appropriate for these plaintiffs to come into court as well. And they're fundamental. They are so, they are so fundamental to public health policy, to public policy, that it's appropriate for them to be heard in court as well. That's United States Supreme Court precedent says that. Thank you. So, at the end of the day, whatever workplace conditions these plaintiffs would face, they could maintain that integrity of self. And they did continue through the COVID-19 responses to even do that. It wasn't until September 2021, when the governor issued his executive order, attempting to require this vaccination and testing, and then to loop around and say now go arbitrate about it or deal with it in collective bargaining, that these plaintiffs came to a place where, at the end of their work day, they were going to be asked to do something that would not just affect their workplace and their work day, but would affect them, their integrity. Their entire self, their individual and fundamental identity and health. And it was at that time that the state as an employee in the state in its attempt to address COVID-19, frankly, overstepped. And this issue of responding to COVID-19, its mitigation measures, and how to respond to that is not simply a workplace issue, which defendants and appellees are attempting to say it is. It is a matter of public safety, of public health. And Illinois statutes already address how to handle this issue of public health. The Illinois Public Health Code has in place a statutory scheme for responding to diseases and to mitigating those diseases. And it spells out how to handle even issues of vaccination and testing. There is certain measures that can be required, but there's process that must be followed before a person can be required to submit to vaccination or to testing for mitigation of any disease. And that's spelled out in the Department of the Public Health Code. I have another question. This case has been before this court before in other contexts. And dealing with questions of COVID and the idea is the best science available at that time, supposedly underlying actions of the governor and the state in general. It's been a year and a half since Glass 2 was rendered the last time this case was before us. And it seems to me that there have been lots of developments concerning our understanding of COVID, how it spreads and how it works and all the rest of it. Has the governor's office or any of these agencies modified their directive to the employees based upon any of the changes in the science that we now understand? At the beginning of this summer, it was announced to all the state departments, except for the Department of Veteran Affairs, that there would come a time when the vaccine mandate would be dropped. And so, four of the five departments that are issued now don't currently, did not through the summer, have a vaccine mandate. Now, there is rumblings in some of those departments that the attempt to mandate the vaccine will be brought back. Because even the wording in that decision to end it said if numbers start to rise, basically we reserve the right to bring back the mandate. But Department of Veteran Affairs is still under. I want to give the court a couple citations as we are nearing the end of this time. So, it's National Federation of Independent Business versus Department of Labor Occupational Safety and Health Administration, 142 Supreme Court 661. That is a January 2022 case in which the United States Supreme Court said that mitigation measures related to COVID-19 are a matter of public health and not workplace safety. Specifically, rejecting the idea that COVID-19 is a workplace danger, which can be addressed through OSHA regulations or workplace regulations, or indeed, even through the setting of collective bargaining and arbitration. It is a matter of public health to be dealt with under that public health scheme and the policies that go along with it. And in that case, the Supreme Court also said a vaccine mandate is not like other workplace measures because at the end of the day, it cannot be undone. That's what these plaintiffs ended up dealing with is that there was a mandate imposed on them, not through some public health policy or statutory scheme, but through a governor's executive order that would have imposed on them a vaccine, even medical procedures in that testing the chemical compounds that could not be undone at the end of the day. And it is appropriate for those plaintiffs to come to court and ask for relief from that mandate, from those requirements. The Sebelius case has any language in there that would address a requirement of weekly testing? The Sebelius case? The one you just cited. Oh, that's the OSHA case. They were dealing specifically with the vaccine mandate, but it was that language that our responses to COVID-19, our public health. So the answer to my question would be no? No, because they did not reach the testing as far as I know. Okay. Very well. No other questions, then, counsel for the appellee? You may argue. Thank you, Your Honor. May it please the court? Assistant Attorney General Carson Griffiths on behalf of the state defendants. Unless the court has any questions regarding state defendants' argument as to the insufficiency of plaintiff's brief on appeal, we would rest on our brief on that issue and focus the comments I'm going to make today on two issues instead. First, the circuit court's lack of subject matter jurisdiction over these claims, and second, the insufficiency of the claims on the merits. Counsel, Article 6, Section 9 of the Illinois Constitution talks about conferring subject matter jurisdiction on circuit court. The legislature can do that to review administrative action by state defendants. Now, frankly, as I read that, that always struck me as meaning decisions, administrative decisions, like a decision coming out of the Commerce Commission or the Pollution Control Board, and how, under what limited circumstances that's, there's jurisdiction. And, of course, they provided for jurisdiction primarily in the appellate court for some of these. So, I guess my question is, in this case, there was no administrative decision rendered by some administrative entity, was there? There was not an administrative decision in that sense. Well, that's curious when you add in that sense. In what sense has there been an administrative decision in this case where the plaintiffs bring their suit in circuit court and there doesn't seem to have been any administrative decision involved? There should have been an administrative decision involved here, is our position. And that's because these union member plaintiffs are subject to the Labor Relations Act, which is a comprehensive statutory scheme enacted by the General Assembly intended to provide for an administrative process to resolve disputes between union members and their employers in the public employment context. So, it's your position that this idea about reviewing administrative action is broad enough to include instances where claims made as here could be cognizable under, by an administrative agency, such as, let's say, the State Labor Relations Board. And because there could have been brought there, the circuit court is without jurisdiction. Is that your claim? It's not that they could have been brought there, Your Honor. It's that they have to have been brought there. And then the Labor Relations Act specifically outlines the circumstances in which a decision is subject to judicial review. And as this court emphasized in Glass 1, that is limited, the standing to pursue such a claim in circuit court is limited to a public employer or an exclusive bargaining representative. Plaintiffs are neither of those things. Plaintiffs are individual union members. So, what plaintiffs should have done if they had, if they wanted to do anything, is to pursue an action, an unfair labor practice claim against their union, alleging a breach of the duty of fair representation. I want to emphasize that those claims would have failed because, as I'm going to get to later in my presentation, plaintiffs don't have statutory rights under the Department of Public Health Act or Health Care Right of Conscience Act that would allow them to pursue these claims against their union. But that would have been the process by which they should have done so. Simply going into court and challenging an interest arbitration award and a group of memoranda of understanding that their unions and the state agreed to is not encapsulated by the Labor Relations Act. The Labor Relations Act makes clear that the parties to a collective bargaining agreement can pursue such claims after those processes have played out. And that's what this court's decision again in Glass 1 emphasized was these plaintiffs are individual union members. They can't just run into court and try to undermine agreements between their union and the state. And that's the purpose behind the entire Labor Relations Act. It's to ensure that disputes will be channeled through an exclusive bargaining representative and an employer. They will go to an expedited, generally administrative process in front of experts who continually deal in the field of labor relations. Is there any case other than what you cite Glass 1, which is, if I remember correctly, was dealing with temporary restraining orders and limited review. Is there any case which stands for the proposition that under Article 6, Section 9, the fact that a claim could be submitted to an administrative agency bars the circuit court from hearing it, as opposed to, as I say, what I originally understood this to mean, once there is a decision, then it's limited? Yes, Your Honor, there's a whole host of cases, including the Stahulak decision by the Illinois Supreme Court, City of Chicago v. Fraternal Order of Police, Aspen v. Central Management Services, Zander v. Carlson, all of which emphasize that when you're challenging an arbitration award, if you're challenging the validity of a provision of a collective bargaining agreement, which is, in effect, what these memoranda of understanding are, or if you're bringing a claim that is, in effect, an unfair labor practice, which plaintiffs expressly brought in this case in Count 2, all of those things have to go to the Labor Relations Board. There is no jurisdiction in the circuit court to pursue those in the first instance, because, again, that's the purpose of the Labor Relations Act. And specifically, the special statutory jurisdiction of the circuit court in administrative actions can be set and defined by the legislature, and that is precisely what it's done here. And that's what this court recognized in Glass correctly. And also, I want to emphasize that the Fifth District recently recognized the same principles in Thornton v. Illinois Department of Corrections, where plaintiffs who are individual IDOC employees challenged the very same interest arbitration award that plaintiffs challenged in this case, and they brought one of the very same legal theories that the Department of Public Health Act prohibited the state and the union from arbitrating, or the arbitration panel, excuse me, from considering that issue. And the Fifth District rejected it, relying on this court's decision in Glass, saying that- That's a misrepresentation as to the holding of National Federation of Independent Businesses. That case dealt with a specific challenge to an OSHA regulation under the terms of the OSHA statute, which limits that agency's authority to regulate workplaces. And OSHA had a rule that said any business with over 100 employees has to have a vaccination or testing requirement, and the U.S. Supreme Court said that exceeded its statutory authority, so there was no constitutional claim in National Federation of Independent Businesses. And it said nothing about the Labor Relations Act, specifically the state Labor Relations Act. It didn't say anything about a federal Labor Relations Act either. It said something about a federal agency's enabling statute, and that is all it said. It didn't say anything beyond that. And I also want to emphasize that there's no constitutional claim in this case, Your Honor. This case is about two statutory claims, and this court- First, I want to point Your Honors to, in support of that notion, to Plaintiffs' Opening Brief at pages 7, 10, and 12. They expressly say that their arguments are being brought under their due process rights as reflected in a statute, either the Health Care Right of Conscience Act or the IDPH Act. They are not bringing- They don't argue a constitutional claim. They didn't in the circuit court, so that's not in this case. Also, I want to emphasize that in this court's Glass 2 or Graham, however you want to title it, opinion from the denial of the second TRO motion, this court characterized Plaintiffs' claims as being brought under the IDPH Act and the Health Care Right of Conscience Act. Then, Plaintiffs were allowed an opportunity to file a second amended complaint in which they could have raised a constitutional claim. I want to emphasize, I say could have. There would have been no subject matter jurisdiction, but they could have amended their complaint. The circuit court allowed them the opportunity to do that, and they forwent it. So, again, they're forfeiting constitutional claims left and right, and I think any fair reading of the amended complaint itself as before this court today can't be read as bringing a constitutional claim. There are some citations- So, Ms. Hager's bringing a claim pursuant to the Conscience Act. Is that what you're suggesting? Yes. She's brought a claim under the Department of Public Health Act and the Health Care Right of Conscience Act, neither of which are valid claims. Of course, as I suspect you know, I was the dissenter in Glass 2 warning that this court was mistaken when it held that the Conscience Act didn't provide protections. Was I correct? You don't have to decide whether you were correct or incorrect, Your Honor, because there has been a change in the law since then. And as Your Honor recognized in your dissenting opinion, that the circumstances might be different once the amendment to the Health Care Right of Conscience Act took effect on June 1, 2022, which expressly stated that it's not a violation of the Act to take any measures or impose any requirements intended to prevent the contraction or transmission of COVID-19, and that that amendment applied to all actions pending after the effective date. So here we have a circumstance. This case was pending on June 1, 2022. So we think Glass 2's majority opinion was correctly reasoned. We agree with the interpretation of the prior version of the statute, but we're dealing with a different version of the statute now. And plaintiffs haven't made any argument in their opening brief or neglected to file a reply brief addressing our argument that that amendment should apply to them. So they've forfeited twice any contention that the amendment cannot apply retroactively to them in their claim in this case. I guess, Ms. Hager, also about changes in the science underlying these actions. This is sort of a moving target. It's now been a year and a half since Glass 2. Have the defendants or the governor's office changed any of the orders based upon a changing understanding of what's going on with COVID? Well, so with respect to the executive orders, those have all expired. What we're dealing with here are the arbitration award and the memoranda of understanding, which are still enforceable and valid and in effect. However, Ms. Hager correctly recognized that the state in IDHS, IDOC, and IDJJ facilities has suspended the enforcement of that requirement while reserving the right to reinstate it should cases increase. I read the memorandum and it was clearly stated it was based upon the understanding of the science regarding COVID at this time. So hasn't that changed? And where do we stand? I'm not sure what science Your Honor is referring to. Well, they didn't say. They're just talking about scientific analysis and so forth informing this action. Respectfully, Your Honor, I think what the letter refers to that suspends it is we've taken into account your request that we suspend this requirement because the vaccination rates have gotten so high in these facilities. We feel comfortable suspending it and I know there's concerns about hiring and other things like that reflected in the letter as well. So to the extent the science might change, then that might be something that the parties would want to revisit the memorandum of understanding or go to the Labor Relations Board and say some of because if you look at specifically either the not the memoranda, but the arbitration award. There was expert testimony at that arbitration hearing where the state's expert testified as to the dangers of COVID-19 in congregate facilities specifically and how it spreads and all that. So those are considerations that the arbitration panel is well equipped to consider. And so again, that goes back to the subject matter jurisdiction point. And so I would emphasize again that to the extent there's any avenue here, it would have been in the past to go to the Labor Relations Board. I think the time to do so has long expired at this point, but plaintiffs never pursued that. And also, again, their claims fail on the merits. So unless this court has any further questions, we ask that you affirm the circuit court's judgment. Thank you. Thank you. I sense there are no questions. Counsel. You're still muted. Thank you, Your Honor. I agree that you should affirm the order of the circuit court. But I do think you need to look at the types of remedies that are available to employees in this context. And I think you have to bring sort of a more finely grained analysis to it. You have remedies under a contract. And if you have a contractual claim, you have to exhaust before you can go to court. That's what the Public Labor Relations Act says. You have remedies that violate the Public Labor Relations Act. And before you can go to court on that, you can file an end for labor practice charge, get an administrative decision, and have it reviewed in court that way. If you have the exercise of a statutory right, you know, Justice Judge Steigman and I, we did a case 30 years ago called the whole sample case where the ruling was notwithstanding the existence of a collective bargaining relationship, notwithstanding the existence of the Labor Relations Act. If you had a pure statutory right and irreparable harm, employees had the right to come to court. And I checked again this morning, the whole sample case has never been overruled. Justice Steigman and I had a sequel where Justice Steigman held that if there's a special place within a statute for the Attorney General to take action, then the Attorney General is the only entity that can do that. But so far as I know, it's still good law. And I agree, actually, that the very first point that was talked about with respect to the glass one decision in terms of what the definition of administrative decision is, I think that's susceptible to challenge. Now, a lot of water has gone under the dam since then. And in this case, that holding of challenge, that holding in glass one has never been challenged by the plaintiff. They've never come in and said, well, that was a wrong reading of the Constitution or a wrong reading of the case law. And so I think that they have forfeited the argument. Instead, what the plaintiffs have done, and this is in the amended petition for TRO, is they pled that the union should be a defendant and that an unfair labor practice had been committed. That under the Xander case is solely within the jurisdiction of the Labor Relations Board. And so given what the plaintiffs have pled in this case, I think you can easily affirm that the union should be dismissed. Did they use the language, Mr. Jokic, that there was an unfair labor practice act? That was in count two of the first amended complaint in this case. Well, I'm just curious. Let's assume a situation where we had the government that decided that they wanted to impose, they wanted to inject all governmental employees with some new substance. Let's say some new something comes out. We want to inject everyone with it. And there's some serious questions about it, further serious questions, and maybe we've learned that we should be more susceptible or skeptical, rather, of the scientific claims. And people say, this is a violation of my constitutional rights to be injected with anything I don't want. Is it your position that because it might be an unfair labor practice, underline their complaint that they have to wait however long it's going to take to get that resolved administratively as opposed to getting some immediate relief from the judiciary against this violative practice? So I don't think it's an unfair labor practice for a union not to pursue all of the statutory rights of its members. Okay. And, you know, I think if you had a straight constitutional claim that the union could decide whether to pursue that or not, but that the union's decision with respect to whether to do that, so long as it was made in good faith and didn't constitute intentional conduct, that would be legally okay. And the members could then decide what to do in that situation, whether they want to do it or not. I appreciate your answer. And I think I didn't ask the right question. My question wasn't so much concern your client asked me in this case, but concerning generally, I suppose the Attorney General's claim that even if something is arguably unconstitutional, a violation of constitutional rights to be injected with some dangerous substance, that the plaintiffs can't come at the circuit court for relief. I think that's essentially what is being argued here and I'm wondering if you agree with that. I think it's a bridge too far, Your Honor. I really do. Now, that's why I started with, I think you can affirm the order of the circuit court in this case, because I think you decided already in this case and in Graham, that the Health Care Right of Conscience Act and the Department of Public Health Act do not afford the plaintiffs in this case any relief. And I think that since you've decided that, that is the rule that should be applied in this case. And, you know, I do apologize. I'm looking at this narrowly from the aspect of people that I represent. That's my job. And, you know, I would like to say that in the interest arbitration, we took the position that a vaccine or test policy was a much better one. And that testing was really more suited to slowing down the spread of the disease than vaccination was. And honestly, I think that the science has shown that to be correct, given how easily vaccinated people spread the disease. And perhaps it was a recognition of that that caused the Department of Corrections to suspend the vaccination mandate in January of 2020, what year is it? 2023. And it was a recognition of that that led the federal government and then the Department of Human Services to suspend the vaccination mandate over the summer. And I see I have no time. I could say a lot more about what's going on under the bridge here. Okay. And about a lot of jurisprudence, but I won't unless anybody's got any questions. I do think you have plenty of basis to affirm the order of the circuit court in this case. No questions. Thank you, Mr. Joe, Joe, Joe. Yes, I'm trying to get it right that time and I appreciate it. Miss Hager rebuttal please. Simply, there is not room in this for the issues to have gone to collective bargaining and arbitration. There was already a statutory scheme in place for how to deal with covet 19 and deal with any disease mitigation. The Illinois public health code already had the scheme in place. The governor's executive orders in September 21 and previous and after can't change that statutory scheme. This court recognized that in the Austin line of cases, the United States Supreme Court has recognized that long ago. Youngstown sheet and 2 company versus Sawyer 343 US 579. It's a 1952 case from the Truman administration and the steel mill cases. You cannot buy executive order or administrative Fiat change the statutory screen scheme. Illinois already had public policy and public health codes in place to deal with disease mitigation. It was inappropriate to attempt to mandate this vaccine and testing scheme on to any employees, let alone the employees in this particular case in these departments. And it was inappropriate to try to send that to collective bargaining into arbitration. And because there isn't any room in all of that for there to be collective bargaining plaintiffs don't have to wait for that process to take place. It wasn't appropriate to send it there in the first place. They have the room to come directly to court and ask for these individual fundamental rights to be vindicated and upheld. That's exactly what they did. The circuit court had jurisdiction should have heard their claims out. And this court can recognize that subject matter jurisdiction does indeed exist did indeed exist and allow these plaintiffs claims to move forward. Thank you. Council I have a question with regard to the Supreme Court cases, you've alluded to there in those cases there was an identifiable statutory analog that they relied upon. Isn't that true. With regard to the public health code to come in. Yeah, it's a challenge in the court because there was a statute empowering the court review. Okay, I see. Well, in this case, I think that citizens of the state of Illinois have a interest in a right to expect that statutory scheme to be followed. And it may, you know, it can be on thought of unprecedented the ways that somebody might try to get around that statutory scheme and have something that goes against it. But jurisdiction nonetheless must exist for people to come in and have redress when that statutory scheme is not being followed the way that it should be. The public health code does have a provision for due process if they're supposed if, if someone in the statute conceives that it would be the local health department requiring somebody to submit to vaccination or medical testing. And then says they have the right to refuse that until there's a court order in place, requiring them to submit to the vaccination or testing. We didn't even have that happen here because the local health departments didn't get the chance to follow that statutory scheme it was essentially lift out of their hands. Because of being, you know, emergency declarations and saying we must address this now. But nonetheless, the statutory scheme is there and there is the provision even in that statute for people to have a means to come to court and hear their reasons for refusing to submit to vaccine or testing heard by the judicial venue. Any further questions. Thank you all for your arguments for take this matter and advisement, we now stand in recess.